# DEFENDANT'S EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| JOHN COGGIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: **2:05-CV-1214-MEF** |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF ORENCIO GARCIA-BRENES, M.D.

I, Orencio Garcia-Brenes, M.D., being over the age of eighteen and competent to testify, hereby declare as follows based upon my personal knowledge:

1. I am the Clinical Director of the Health Services Unit at the Federal Prison Camp at Maxwell Air Force Base, Montgomery, Alabama (FPC Montgomery). I have held this position continuously since October 1998.

2. I received my medical degree from the Autonomous University in Guadalajara, Mexico. I am licensed to practice medicine in the Commonwealth of Puerto Rico. I am not licensed to practice medicine in the State of Alabama or any other State. I am permitted to practice medicine in Federal prisons by virtue of Bureau of Prisons (BOP) regulations and my Puerto Rico medical license. I cannot practice medicine

in Alabama outside the Federal prison system. I am a general practitioner (GP) and do not hold a medical specialty.

3. As Clinical Director, I am responsible for the provision of health care services at FPC Maxwell. I directly supervise all health care providers at FPC Maxwell. In July and August 2001, my medical staff consisted of one physician's assistant, Oscar Rodriguez; two nurse practitioners, Daphne Essex and Doris Little; and a registered nurse, Ramona Lake. The Health Services Unit also had a Public Health Service pharmacist, Lieutenant David Folmar, who I did not supervise. Bureau of Prisons Correctional Officers are not responsible for providing health care services to prisoners, and I have no supervisory authority over them.

4. From July 25, 2001, until August 27, 2001, John Coggin was seen several times in the Health Services Unit with complaints of right upper quadrant abdominal pain. His chart accurately shows all health care services he received in the prison.

5. I examined Mr. Coggin on August 27, 2001, and at that time I decided that he needed to be seen by a specialist for expert evaluation and treatment. I had Nurse Practitioner Daphne Essex call Dr. Antonio J. Williams, a board-certified general surgeon, on August 28, 2001. Doctor Williams agreed to see the patient the next day, Wednesday, August 29, 2001 We sent the

patient along with his labs and ultrasound report to Dr. Williams and asked him to please evaluate and treat accordingly.

6. Doctor Williams determined that Mr. Coggin was suffering from biliary colic and recommended gallbladder surgery. I followed Dr. Williams' plan and intended to schedule the recommended surgery. However, Mr. Coggin was transferred to Baptist Medical Center on Sunday, September 2, 2001, with an upper GI Bleed, and the gallbladder surgery never took place.

7. As a general practitioner, I determined that Mr. Coggin needed to be evaluated by a specialist. I promptly scheduled a consult, and after that I followed the specialist's advice.

Pursuant to 28 U.S.C. § 1746 (2) I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11 day of October, 2007.

_____
ORENCIO GARCIA-BRENES, M.D.
Clinical Director, FPC Montgomery