# PLAINTIFF'S EXHIBIT E

# AFFIDAVIT
# OF
# JOHN COGGIN

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN COGGIN, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| V. | )   2:05-CV-1214-MEF |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| DEFENDANT. | ) |

**AFFIDAVIT OF JOHN COGGIN**

STATE OF ALABAMA
JEFFERSON COUNTY

John Coggin, being duly sworn, deposes and states:

1. My name is John Coggin. I am over 18 years of age and reside in Shelby County Alabama. I am competent to make this affidavit and I have personal knowledge of the facts stated in this affidavit. To my knowledge, all of the facts stated in this affidavit are true and correct. I am the plaintiff in this matter.

2. I was incarcerated in the FPC Maxwell for the period from August 26, 1999 to November 13, 2001. I was seen and treated at the Health Services Unit of Maxwell for various conditions. During my interactions at the HSU I was not allowed to record my descriptions of my symptoms or complaints in the medical chart. I was not allowed to record the content of conversations I had with health care providers, nor record the

1

questions posed to me or my responses. I was not allowed to record the recommendations or comments made by the health care providers either. I was not allowed to review the content of my medical chart for accuracy or content. I have now had an opportunity to do so and in many instances, information recorded is inaccurate or does not fully state my complaints or symptoms related to the health care providers. These differences are more fully outlined in my deposition that I have given in this case.

3. I was never told to discontinue my Motrin or Anaprox in July and August 2001 by any personnel of the HSU or FPC Maxwell.

4. In late October 2001, I met with my counselor Ms. Beasley to discuss my impending release from Maxwell on November 13, 2001. I was to be released to the Birmingham Community Center, which is a half way house facility. My sentence was up in the first week in April 2002. I was informed that under the usual BOP procedure, inmates are released to a half way house 3 to 6 months prior to the expiration of their sentence. BOP rules require this, although an inmate may be released to home confinement at his "10% date", which is the period when he only has 10% left on his sentence. I understood my "10% date" was January 1, 2002.

5. In my pre-release meetings with Ms. Beasley, I was instructed that a requirement of the half way house is that I must work during the days and pay the facility a certain percentage of my earnings. The question came up about how I could do this since I was still quite weak and still on convalescence status at Maxwell as a result of my GI bleed. I was on convalescence status from when I got out of the Baptist hospital on September 17, 2001 to my release date on November 13, 2001.

6. I believe Ms. Beasley suggested calling Mr. Larry Spencer, who I understood was in charge of the half way houses for the BOP in the Southeast. In a discussion with him it was agreed that due to my medical condition that I would be given Home Confinement status immediately upon my "10% date of January 1, 2002". It was agreed that I would reside at the Birmingham Community Center from November 13, 2001 to December 31, 2001 and be permitted to work out of my home during that period.

7. My understanding based upon these discussions, was that Mr. Spencer spoke with the Birmingham Community Center to approve this arrangement. He did indicate that the half way house did not want in any way to be responsible for my medical expenses.

8. It is my best recollection that this is the reason for this agreement being prepared. I understood the intent of the agreement to be that I could work out of my home due to my medical condition and that I would be placed on Home Confinement on January 1, 2002 and that I would be responsible for my medical expenses while at the half way house and while on Home Confinement through the date of the end of my sentence in April 2002.

9. There was absolutely no discussion about releasing the BOP or the government from any tort claim. I would have never agreed to that. There was no discussion about or intent to release the BOP from any future economic damages of any sort or kind. The intent as I understood it was that I would be responsible for my medical expenses and home confinement expenses while at the half way house and on home confinement, and not the Birmingham Community Center half way house.

3

10.  Further, an express condition on the part of the government in this agreement was not met. The agreement expressly required as a condition that I be given "Home Confinement status immediately upon my ten percent date, January 1, 2002". This did not occur. I was not placed on home confinement until some days after January 1, 2002.

AFFIANT FURTHER SAITH NOT.

_____
JOHN COGGIN


SUBSCRIBED AND SWORN TO BEFORE ME ON THIS _13_ DAY OF
_November_____, 2007, at Birmingham, Alabama.

_____
ADRIENNE L. ZINDER
Notary Public in and for the State of Alabama

My commision expires on __1/9/08__