IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN COGGIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: **2:05-CV-1214-MEF** |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

**REPLY MEMORANDUM IN SUPPORT OF UNITED STATES'
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff has failed to overcome the United States' motion for summary judgment with evidence creating a genuine issue of material fact or legal arguments showing that the United States is not entitled to judgment as a matter of law. *See,* Fed. R. Civ. P. 56 (c). Accordingly, for the reasons shown below and in the United States' opening brief, summary judgment should be entered for the United States.

**ARGUMENT**

**I.    The United States is Entitled to Judgment on
Plaintiff's Claim Alleging That BOP Guards
Failed to Provide Adequate Medical Care.**

**A.    Prison Guards are not Health Care Providers.**

In its opening brief, the United States argued that it is entitled to judgment on plaintiff's claim alleging that Bureau of Prisons (BOP) correctional officers failed to

provide adequate medical care because prison guards cannot be liable for medical malpractice under Alabama law. Def's SJ Memo at 13-19. Plaintiff concedes that this is a medical malpractice action governed by the Alabama Medical Liability Act, Ala. Code §§ 6-5-480 - 6-5-488 (2007), and the Alabama Medical Liability Act of 1987, Ala. Code §§ 6-5-540 - 6-5-552 (2007)(collectively "AMLA"), but argues that prison guards are health care providers subject to medical malpractice liability under the act. Pl's Opp. at 25-26. Plaintiff's argument fails as a matter of statutory construction and common sense.

When interpreting an Alabama statute such as the AMLA, the Alabama Supreme Court instructs that "[t]he cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute." *Ex parte Moore*, 880 So.2d 1131, 1140 (Ala. 2003)(internal quotes and citations omitted). The Alabama legislature clearly stated its intent in § 6-5-540 of the AMLA of 1987 and instructed that the statute "shall be construed so as to be consistent with . . . the legislative intent stated herein." Ala. Code § 6-5-541 (2007). The statute expressly states that

> this Legislature finds and declares that the increasing threat of legal actions for alleged medical injury causes and contributes to an increase in health care costs and places a heavy burden upon those who can least afford such increases, and that the threat of such action contributes to expensive medical procedures to be performed by physicians and other health care providers which otherwise would not be considered necessary, and that the spiraling costs and decreasing availability of essential medical services caused by the threat of such litigation constitutes a danger to the health and safety of the citizens of this state, and that this article should be given effect immediately to help control the spiraling cost of health care and to insure its continued availability.

Ala. Code § 6-5-540 (2007). Therefore, the clear intent of the AMLA is to limit medical malpractice actions, not to expand the realm of malpractice liability by visiting new and unprecedented liability for alleged medical injury on people with tangential first aid responsibilities such as police officers, teachers, camp counselors, and prison guards. The AMLA's definition of health care provider must be read with this unambiguous legislative intent in mind.

First, plaintiff argues that the prison Health Services Unit (HSU) is a "medical institution" under Ala. Code § 6-5-481 (3), and that the guards are somehow employed by the HSU to deliver medical care.[1] Pl's Opp. at 22. However, the undisputed evidence establishes that BOP correctional officers do not work in the HSU. Doctor Garcia testified in his declaration that he is the Clinical Director of the FPC Maxwell HSU and that he directly supervises all health care providers at the prison. Def. Ex. 1, Garcia Decl. at ¶¶ 1, 3. In July and August 2001, the HSU medical staff consisted of Dr. Garcia, physician's assistant Oscar Rodriguez, nurse practitioners Daphne Essex and Doris Little, and registered nurse Ramona Lake. *Id.* at ¶ 3. Doctor Garcia clearly states in his declaration that **"Bureau of Prisons Correctional Officers are not responsible for providing health care services to prisoners, and I have no supervisory authority over them**." *Id.* (emphasis added). Plaintiff cannot and does not dispute this evidence. *See*, Pl's Opp. at 22, 26.

---

[1] See Section II below at pp. 12-13 for the United States' argument that HSU is not a medical institution under the AMLA.

Next, plaintiff attempts to cram prison guards into the ALMA's definition of "other health care providers." Pl's Opp. at 26. This contradicts the plain meaning of the language of the statute. The AMLA defines "other health care providers" as "any person *employed by physicians*, dentists, or hospitals *who are directly involved in the delivery of health care services*." Ala. Code § 6-5-481 (8) (emphasis added). Bureau of Prisons correctional officers are law enforcement officers responsible for the custody of federal prisoners. They do not work in the prison Health Services Unit (HSU), are not "employed by physicians dentists or hospitals," and are not "directly involved in the delivery of health care services." Accordingly, they are not health care providers.

Plaintiff attempts to support his argument that prison guards are health care providers by referencing portions of Dr. Garcia's and Physician's Assistant (PA) Oscar Rodriguez's depositions where they testify that BOP correctional officers have some first aid training and can call medical personnel if they encounter a medical emergency in the prison. Opp. at 26. This is perfectly consistent with their law enforcement responsibilities and does not transform them into health care providers, "employed by physicians, dentists, or hospitals who are directly involved in the delivery of health care services," that are subject to medical malpractice liability. *See*, Ala. Code § 6-5-481 (8).

Not surprisingly, plaintiff cites no authority supporting his argument that a prison guard is a health care provider. The Alabama Supreme Court has held that allied health professionals such as pharmacists, registered nurses, medical reference laboratories, the

Red Cross, and orthotists are "other health care providers" under § 6-5-481 (8) of the AMLA. *Cackowski v. Wal-Mart Stores, Inc.*, 767 So.2d 319, 325 (Ala. 2000)(pharmacist); *Anderson v. Alabama Reference Laboratories*, 778 So.2d 806, 810 (Ala. 2000)(medical reference lab); *Ex parte Main*, 658 So.2d 384, 387 (Ala. 1995)(registered nurse); *Wilson v. American Red Cross,* 600 So.2d 216, 218-19 (Ala. 1992)(American Red Cross); *Tuscaloosa Orthopedic Appliance Co. v. Wyatt*, 460 So.2d 156, 161 (Ala. 1984)(orthotist).

      This Court recently explained that to be considered an "other health care provider" under the AMLA, a person's duties must be "inextricably linked" to the physician's treatment of his patients and "an integral part of the delivery of health care services to the public." *Verrett v. State of Alabama Dept. of Mental Health*, 2007 WL 3441246 *2 (M..D. Ala. 2007)(Slip Copy). *See also, Billingsley v. LabCorp, Inc.* 2006 WL 2559819 *4 (M.D. Ala. 2006)(Slip Copy). Prison guards hardly satisfy this standard. Other health care providers under the act are allied health professionals such as nurses, pharmacists, and medical technologists who directly assist physicians in providing health care services to their patients. There is no evidence that BOP correctional officers assisted Dr. Garcia in treating plaintiff, and the act does not cover prison guards simply because they have some first aid training as part of their law enforcement responsibilities. *See*, Def. Ex. 1, Garcia Decl. at ¶ 3.

The Alabama Supreme Court frequently looks to cases from other jurisdictions when determining whether a particular defendant is a health care provider subject to malpractice liability. *See, e.g., Cackowski*, 767 So.2d at 325 n.2; *Wilson* 600 So.2d at 218. Plaintiff has not cited a single case from any jurisdiction holding that a prison guard is a health care provider subject to malpractice liability. Given prisoners' well-known propensity for litigation, this complete absence of malpractice authority is telling.

To the contrary, the Middle District of Florida has held that jailors, "are not health care providers . . . and so they may not be held liable for medical malpractice[.]" *Nelson v. Prison Health Services, Inc.* 991 F.Supp. 1452, 1466 (M.D. Fla. 1997). Similarly, New York has held that a "medical malpractice cause of action which arose from the defendant police officer's allegedly improper performance of cardio-pulmonary resuscitation, must be dismissed" because "the laws of New York do not contemplate that an individual who is trained in first aid techniques, but is not a member of the medical profession, be subject to suit for medical malpractice." *Lazzaro v. County of Nassau*, 665 N.Y.S.2d 441 (N.Y. App. Div. 1997). These are persuasive authorities for rejecting plaintiff's attempt to bring prison guards within the definition of health care provider.

Finally, the absurdity of plaintiff's position becomes clear when the statute is read as a whole. *See, United States v. Atlantic Research Corp.*, 127 S.Ct. 2331, 2336 (2007)(restating the maxim that statutes must be read as a whole). Under the AMLA, "the plaintiff shall have the burden of proving by substantial evidence that *the health care*

6

*provider* failed to exercise such reasonable care, skill, and diligence *as other similarly situated health care providers in the same general line of practice*[.] Ala. Code § 6-5-548 (emphasis added). *See also*, Ala. Code § 6-5-542. In addition, "[a]s a general rule, in a medical malpractice action, the plaintiff is required to produce expert medical testimony to establish the applicable standard of care and a breach of that standard of care[.]" *Anderson*, 778 So.2d at 811.

Under plaintiff's argument, a prison guard would have to be considered to have a "general line of practice" and expert medical testimony would be required to establish the applicable medical standard of care for a prison guard and a breach of that standard. This contradicts the plain meaning of the statute and impermissibly stretches the definition of health care provider far beyond anything remotely contemplated by the Alabama Legislature. Plaintiff chose to plead this case as a one-count medical malpractice action. Complaint ¶ 43. He is bound by that choice, and this case is limited to the alleged acts and omissions of health care providers.

        **B.**    **The State Statutes Governing Sheriffs and Other Public Officials Relied Upon by Plaintiff Cannot Give Rise to FTCA Liability for the Conduct of BOP Correctional Officers.**

In its opening brief, the United States explained that the alleged breach of BOP regulations cannot give rise to FTCA liability. Def's SJ Memo at 16-18. Plaintiff concedes this argument by failing to even address it, and the United States is entitled to judgment on plaintiff's claims alleging violation of BOP policies and procedures.

Complaint ¶¶ 42, 43 (a)(2). *See, Zinno v. Baker*, 2007 WL 2433902 *2 (11th Cir. 2007)(issue is tacitly conceded if not addressed in opposition to dispositive motion); *Greenbriar v. City of Alabaster*, 881 F.2d 1570, 1573 n. 6 (11th Cir. 1989)(holding that issue is waived if not briefed).

Plaintiff now argues, for the first time, that BOP correctional officers can instead be liable for negligence and negligence per se for allegedly violating Alabama statutes concerning sheriffs' responsibilities for jails. Pl's Opp. at 26-29. As an initial matter, this new claim fails because it is not pleaded in the complaint. Plaintiff concedes, as he must, that this is a one-count medical malpractice action that is governed by the AMLA. *See,* Complaint §§ 42-43. The two statutes plaintiff now relies upon have nothing to do with medical malpractice and cannot serve as a basis for malpractice liability under the AMLA. *See*, Ala. Code § 6-5-548 (a). Plaintiff cannot amend his complaint to add a new claim through argument in his brief opposing summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004).

Moreover, the State statutes plaintiff relies upon govern public officials and entities, not private individuals, and therefore cannot give rise to FTCA liability. *United States v. Olson*, 546 U.S. 43, 46 (2005). Plaintiff alleges that BOP correctional officers violated Ala. Code §§ 14-6-19 and 14-6-105. Pl's Opp. at 26-28. Both of these code sections are found in Title 14, Criminal Corrections and Detention Facilities, Chapter 6, Jails, of the Alabama Code and apply only to public officials. Section 14-6-19 provides

8

in its entirety that "[n]ecessary clothing and bedding *must be furnished by the sheriff or jailer, at the expense of the county*, to those prisoners who are unable to provide them for themselves, and also necessary medicines and medical attention to those who are sick or injured, when they are unable to provide them for themselves. Ala. Code § 14-6-19 (emphasis added).

Section 14-6-105 concerns night deputies, watchmen, or guards.[2] It provides in pertinent part that "[t]he sheriff, in the case of a county jail, or the proper governing authority, in the case of a municipal jail, shall appoint, direct and control said deputy, watchman, or guard, and the county commission or the proper governing authority, as the case may be, shall fix a reasonable salary and the same shall be paid out of the funds of the county or of the municipality if it is a town or city jail in which the jail is located." Ala. Code § 14-6-105. Thus both of these code sections, on their face, apply only to sheriffs, municipalities, and other public entities. In addition, the same statute makes it abundantly clear that "the sheriff has the legal custody and charge of the jail in his county and all prisoners committed thereto[.]" Ala. Code § 14-6-1.

Under the FTCA, the United States may only be liable to the same extent as a

---

[2]The two code sections that plaintiff relies upon are so generic in their mention of medical care that they cannot possibly give rise to liability. As is explained above, "[a]s a general rule, in a medical malpractice action, the plaintiff is required to produce expert medical testimony to establish the applicable standard of care and a breach of that standard of care[.]" *Anderson*, 778 So.2d at 811. The vague references to medical care in the two code sections cited by plaintiff hardly alter this rule.

*private person* under like circumstances. 28 U.S.C. §§ 1346 (b); 2674. The Supreme Court has squarely held that "the Act requires a court to look at the state law liability of private entities, not that of public entities, when assessing the Government's liability under the FTCA[.]" *Olson*, 546 U.S. at 46. The Court flatly rejected the proposition that the scope of FTCA liability for activities that private persons do not ordinarily perform depends on whether state law imposes liability on municipal or other local governments for the negligence of their agents acting in similar circumstances. *Id.* Therefore, because the statutes relied upon by plaintiff apply only to sheriffs and other public entities, they cannot give rise to FTCA liability. *Id.* For all of these reasons, the United States is entitled to judgment on plaintiff's claim alleging that BOP correctional officers failed to provide adequate medical care.

> **II. The United States is Entitled to Judgment Because the BOP Doctor and Physician's Assistant Who Treated Plaintiff Do Not Satisfy the AMLA's Definition of Health Care Provider.**

In its opening brief the United States argued that Dr. Garcia and PA Oscar Rodriguez do not satisfy the AMLA's definition of health care provider because Dr. Garcia is not licensed to practice in Alabama. Def's SJ Memo at Sec. II. Plaintiff argues that *Scheib v. Florida Sanitarium and Benevolent Assoc.*, 759 F.2d 859 (11th Cir. 1985), stands for the proposition that the United States can be held liable for the alleged malpractice of Dr. Garcia even though he does not satisfy the AMLA's definition of health care provider. Pl's Opp. at 23-25. Plaintiff misreads this precedent. *Scheib*

involved application of Florida's collateral source statute. *Scheib*, 759 F.2d at 863. The *Scheib* plaintiff argued that the United States could not invoke this limitation on damages because its military physician was not licensed in Florida. *Id.* The Eleventh Circuit explained that under the FTCA, "state law *cannot expand the Government's liability* beyond that which could flow from an analogous private activity." *Scheib*, 759 F.2d at 864 (emphasis added). Thus, *Scheib* stands solely for the proposition that State law limitations on damages apply under the FTCA. It does not mean that the United States' exposure to malpractice liability is *greater* than that defined by the Alabama Legislature in the AMLA.

Similarly, *Taylor v. United States*, 821 F.2d 1428, 1431 (9th Cir. 1987) and *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986) both involved state caps on malpractice damages. The courts held that these damages caps applied to the United States in actions brought under the FTCA. Neither of these cases expands the Government's liability beyond that contemplated by State law.

*Gallea v. United States*, 779 F.2d 1986 1403, 1404-06 (9th Cir. 1986), is persuasive authority for the argument that lack of a state license can *limit* FTCA liability. *Gallea* involved California's statutory dram shop law which gives immunity to all persons serving liquor except those licensed under California law. Plaintiffs alleged that the Enlisted Club at the Marine Barracks served liquor to an obviously intoxicated patron who subsequently crashed his motorcycle killing their daughter. *Id.* at 1404. The Ninth

Circuit held that because the Enlisted Club was not licensed as a liquor provider under California law, the United States could not be liable under the FTCA. *Id.* at 1406. Therefore, lack of a State license can limit FTCA exposure, and the United States cannot be held liable for the alleged malpractice of its unlicensed doctor under the AMLA.

Plaintiff also argues that the prison Health Services Unit (HSU) is a "medical institution" under the AMLA exposing the United States malpractice liability even though Dr. Garcia is not a physician under the act. Pl's Opp. at 21-22. Plaintiff misreads the ALMA's definition of medical institution. The AMLA defines medical institution as "[a]ny licensed hospital, or **any physician's or dentist's office or clinic** containing facilities for the examination, diagnosis, treatment, or care of human illness." Ala. Code § 6-5-481 (3)(emphasis added).

There is a comma separating "hospital," from "or any physicians or dentists office or clinic." *Id.* There is no comma separating the words "office" from "or clinic." Therefore, hospital, office and clinic are not three words in a series signifying three different institutions. Both "office" and "clinic" are modified by the possessives "physician's or dentist's." The two types of medical institutions are [1] any licensed hospital, or [2] any physician's office or clinic. *Id.*

To qualify as a physician's office or clinic, the facility must contain "facilities for the examination, diagnosis, treatment, or care of human illness." *Id.* Under plaintiff's interpretation, a physician's business office would qualify as a medical institution even if

it did not contain any facilities for the examination, diagnosis, treatment, or care of human illness.  This contradicts the plain meaning of the language of the statute.  Because Dr. Garcia is not a physician under the act, the prison HSU is not a physician's office or clinic.  *See*, Ala. Code § 6-5-481 (5) (defining physician as any person licensed to practice medicine in Alabama).

### III.    The United States is Entitled to Judgment Because the Specialist Who Evaluated Plaintiff is not an Employee of the Government.

In its opening brief, the United States explained that Dr. Antonio Williams, a board-certified surgeon, examined plaintiff on August 29, 2001, determined that he was suffering from biliary colic, and recommended gallbladder surgery.  SJ Memo. at 21-23; Def. Ex. 8, Williams Decl.  Thereafter, Dr. Garcia followed Dr. Williams' expert advice.  Def. Ex. 1, Garcia Decl. ¶ 6.  Doctor Williams was the last doctor who examined plaintiff before he was admitted to Baptist Medical Center with upper GI bleeding on September 2, 2001.  Doctor Garcia did not see plaintiff between Dr. Williams' examination and his admission to Baptist.  Plaintiff does not dispute any of these facts and concedes that Dr. Williams is not a government employee.  Pl's Opp. at 29-30.  These concessions are fatal to his claim.

Plaintiff misreads Dr. Williams' declaration as some sort of legal argument.  It is not.  It is a statement of fact by a fact witness.  Doctor Williams testifies that Dr. Garcia sent the plaintiff to him for expert evaluation, that he exercised independent medical judgment, and that "**[t]hereafter, I was responsible for evaluating and treating this**

13

**patient**." Def. Ex. 8, Williams Decl. ¶ 8 (emphasis added).  This is a statement of fact by plaintiff's treating physician, not a legal argument.

Plaintiff argues that one of his retained experts, Dr. Paris, "opines that the surgical consult does not relieve Dr. Garcia of his duty to provide care that meets the standard either before or after that consult."[3]  Pl's Opp. at 30.  Plaintiff gives no reference by page and line to where this opinion can be found in a supporting deposition or document, and it should not be considered by the Court.  *See*, Section 2, Amended Scheduling Order dated April 11, 2007.  Thus, Dr. Williams' evidence is undisputed.

Moreover, even if the Court were to consider this opinion, it does not contradict Dr. Williams' statement of fact concerning who was responsible for evaluating and treating plaintiff.  Doctor Paris appears to give a vague legal opinion concerning a doctor's generic duty of care.  He cannot dispute the treating specialist's statement of fact in this case that **"I was responsible for evaluating and treating this patient**."  Def. Ex. 8, Williams Decl. ¶ 8 (emphasis added).  Accordingly, the United States is entitled to judgment on plaintiff's FTCA claim because Dr. Williams was responsible for plaintiff, and he is not a Government employee.

### IV.   The United States is Entitled to Judgment on Plaintiff's Economic Damages Claim.

The United States explained in its opening brief that plaintiff has waived his claim

---

[3] Dr. Paris is not similarly situated to Dr. Garcia and the United States will move to exclude him as an expert at the appropriate time.

for future medical expenses by his agreement "to be responsible for my future medical expenses . . . that arise after my release from FPC Maxwell." Def's SJ Memo. at 23-25. Plaintiff concedes that he has no economic damages other than future medical expenses, but now tries to avoid the consequences of the agreement that he drafted and signed in October 2001. Opp. at 30-32.

First, plaintiff argues that the requirements of 28 U.S.C. § 2672 have not been satisfied. This section of the FTCA simply allows Federal agencies to settle FTCA administrative claims presented pursuant to 28 U.S.C. § 2675. It has nothing to do with the agreement that plaintiff drafted and signed in October 2001. Plaintiff submitted his FTCA administrative claim in January 2003, over a year after he made the agreement at issue. *See*, Complaint ¶ 5. The United States did not settle that claim and is not now arguing that plaintiff accepted a partial settlement of the economic damages portion of his FTCA claim.

Rather, the United States is arguing that the clear and unambiguous terms of the agreement plaintiff drafted in 2001 make him solely responsible for any medical expenses that he has incurred or may incur after his release from prison. Def. Ex. 5, BOP Central File at Bates No. 00637. The natural consequence of this agreement is to bar any lawsuit against the United States seeking to recover such future medical expenses.

Next, plaintiff argues that the agreement is not a valid contract under Alabama law. Opp. at 31-32. As an initial matter, the construction of contracts with the United

15

States is governed by "'the principles of general contract law' which become federal common law," not State law. *Fomby-Denson v. Dept. of the Army*, 247 F.3d 1366, 1373-74 (Fed. Cir. 2001)(*quoting, Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411 (1947)). A well-settled principle of general contract law is "where the essential terms of a contract are unambiguous the court will not look beyond the four corners of the document to determine the parties intent." *Ellinger v. United States*, 470 F.3d 1325, 1338 (11th Cir. 2006)(internal quotes and citation omitted). *See also, Norfold Southern Corp. v. Chevron, Inc.*, 371 F.3d 1285, 1290 (11th Cir. 2004)(holding that "[w]here the plain meaning of an agreement is clear, we may not go beyond the four corners of the document to look for additional evidence of the drafters' intentions.")

The terms of the agreement that plaintiff, a lawyer, drafted are crystal clear. The Government agreed that plaintiff would be released from FPC Maxwell to the Birmingham Community Center and allowed to stay at his home during the day, and plaintiff agreed "to be responsible for my future medical expenses and home confinement fees after my release from FPC Maxwell." Def. Ex. 5, BOP Central File at Bates No. 00637. Plaintiff testified in his deposition that the essential terms of the agreement were satisfied. He was released from prison to the Birmingham Community Center half-way house on November 13, 2001, and allowed to go to his house during the day. Def. Ex. 7,

Coggin Dep. at p 107, Ln 11-24. He was released from the half-way house in the first week of January 2002. *Id*. at p 108, Ln 1-6.[4]

The Court should not look beyond the four corners of the document to determine the parties' intent. Plaintiff felt that agreement was beneficial enough to him in 2001 that he reduced it to writing and had it formally signed and witnessed. He cannot now avoid the obvious consequences of his agreement because they are unfavorable to him in this lawsuit. Accordingly, the United States is entitled to judgment on plaintiff's claim for medical expenses incurred after his release from prison or that may be incurred in the future. He has no other economic damages.

## CONCLUSION

For all of the above reasons, and the reasons stated in its opening brief, the United States is entitled to summary judgment, and plaintiff's cause of action should be dismissed in its entirety with prejudice.

---

[4]Plaintiff argues in his new affidavit that the terms of the agreement were not satisfied because he was not released to home confinement on January 1, 2002. Coggin affidavit at ¶ 10. He does not give the date of his release from the half-way house and fails to mention that he was released in the first week of January 2002. *Id*. Given the overall scope of the agreement, its essential terms were clearly satisfied.

Respectfully submitted this 27th day of November 2007.

        LEURA G. CANARY
        United States Attorney


By:   /s/Stephen M. Doyle
      STEPHEN M. DOYLE
      Chief, Civil Division
      Assistant United States Attorney
      Attorney for Defendant
      Post Office Box 197
      Montgomery, AL  36101-0197
      District of Columbia Bar No. 422474
      Telephone No.: (334) 223-7280
      Facsimile No.: (334) 223-7418
      **E-mail:  stephen.doyle@usdoj.gov**


**CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to plaintiff's attorney, Julia T. Cochrun, Esquire.

      /s/Stephen M. Doyle
      Assistant United States Attorney