# DEFENDANT'S EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

---------------- )
                 )
JOHN COGGIN,     )
                 )
       Plaintiff,)
                 )    Civil Action
    -vs-         )
                 )    No. 2:05-CV-1214-F
UNITED STATES OF AMERICA, )
                 )
       Defendant.)
---------------- )

The Deposition of RAYMOND P. MOONEY, PA-C taken before me, Sheila D. Rice, CSR-4163, a Notary Public within and for the County of Wayne, State of Michigan, at 211 West Fort Street, 23rd Floor, Detroit, Michigan, on Wednesday, October 24, 2007.

APPEARANCES:

   PATE & COCHRUN, L.L.P.
   P.O. Box 10448
   Birmingham, Alabama 35202-048
      (By Julia T. Cochrun, Esq.),

      Appearing on behalf of Plaintiff,

   UNITED STATES DEPARTMENT OF JUSTICE
   131 Clayton Street
   Montgomery, Alabama 36104
      (By Stephen M. Doyle, Esq.),

      Appearing on behalf of Defendant.

LUZOD REPORTING SERVICE   (313) 962-1176

|    |    |                                                                          |
|----|----|--------------------------------------------------------------------------|
| 1  |    | the PA performed those tasks, it's the same                             |
| 2  |    | standard of care, isn't it?                                              |
| 3  | A. | Exactly.                                                                 |
| 4  | Q. | There is no difference in the standard of care, is                       |
| 5  |    | there?                                                                   |
| 6  | A. | That's correct.                                                          |
| 7  | Q. | And your standard of care then is determined by                          |
| 8  |    | reference to the delegated task?                                         |
| 9  | A. | That's why I'm getting confused.                                         |
| 10 | Q. | Okay. You don't like that word. Your standard of                         |
| 11 |    | care is determined by the activity that you                              |
| 12 |    | undertake as permitted by your supervising                               |
| 13 |    | physician?                                                               |
| 14 | A. | No. Let me paraphrase it and you tell me if we're                        |
| 15 |    | saying the same thing, okay. If you're the doc and                       |
| 16 |    | you suture a laceration and I'm the PA and I suture                      |
| 17 |    | a laceration, the laceration must be sutured to the                      |
| 18 |    | same standard whether you do it or I do it. That's                       |
| 19 |    | what I -- and I don't think that's what you're                           |
| 20 |    | saying.                                                                  |
| 21 | Q. | That is what I'm saying.                                                 |
| 22 | A. | Okay. Then we agree.                                                     |
| 23 | Q. | Okay. There's not an independent PA standard of                          |
| 24 |    | care, is there?                                                          |
| 25 | A. | No, sir, there isn't.                                                    |

60

```
 1            that.
 2   Q.       Now, in this case would you agree that Dr. Garcia
 3            was ultimately responsible for the care of John
 4            Coggin?
 5   A.       Ultimately, yes.
 6   Q.       And Dr. Garcia was responsible for supervising
 7            Oscar Rodriguez; isn't that right?
 8   A.       Yes.
 9   Q.       And Dr. Garcia was also responsible for supervising
10            the nurse practitioners, Daphne Essex and Doris
11            Little; isn't that right?
12   A.       Yes.
13   Q.       Dr. Garcia was the captain of the team; right?
14   A.       Yes.
15   Q.       And he was ultimately responsible for -- he, Dr.
16            Garcia, was ultimately responsible for the adequacy
17            of John Coggin's care; isn't that right?
18                   MS. COCHRUN:  Object to form.
19   A.       Ultimately responsible because he was the head of
20            the medical care department.  The answer would be
21            yes.
22   BY MR. DOYLE:
23   Q.       He also personally saw the patient, didn't he?
24   A.       Yes, he did also see the patient.  That's true.
25   Q.       And Dr. Garcia was responsible for ensuring that
```

64

```
 1            the standard of care was satisfied; isn't that
 2            right?
 3                      MS. COCHRUN:  Object to form.
 4     A.     Yes.
 5  BY MR. DOYLE:
 6     Q.     And you can't render an opinion on whether or not
 7            Dr. Garcia met the standard of care, can you?
 8     A.     No.
 9     Q.     I'm going to just look at your report a little
10            more.  You attached five references to your report.
11            Let's go through them.
12     A.     All right.
13     Q.     You've got A, which is "Clinical Policy:  Critical
14            Issues for the Initial Evaluation and Management of
15            Patients Presenting With a Chief Complaint of
16            Nontraumatic Acute Abdominal Pain"?
17     A.     Yes.
18     Q.     You've got B, and my copy of B is not great.  What
19            is B?
20     A.     Gee.  I'm beginning to wonder, too.
21     Q.     Because it says posted 6-7, 2006.
22                      MS. COCHRUN:  It's a Medscape
23            article.  Do you see at the bottom?  Does your copy
24            have it at the bottom there?
25     A.     It's a Medscape.  It's Medscape.  And I'm looking
```

65