**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| JOHN COGGIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: **2:05-CV-1214-MEF** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE*
TO EXCLUDE TRIAL TESTIMONY AS TO APPLICABLE
STANDARD OF CARE BY DEFENDANT'S WITNESSES**

**INTRODUCTION**

Plaintiff has moved *in limine* to prevent the Bureau of Prisons' (BOP) health care providers that he accuses of malpractice from testifying in their own defense. Pl's Mot. at 1-7. He also moves to prevent Defendant's retained expert, Dr. Patrick Okolo, and Dr. Garcia from testifying concerning care provided by Oscar Rodriguez, although he admits that he plans to have his own two medical doctor experts, Dr. Philip Smith and Dr. Joseph Paris, do exactly that. *See*, Plaintiff Response to United States' Second Motion *In Limine* to Limit Trial Testimony by Plaintiff's Three Retained Medical Experts (Docket No. 66). Plaintiff's motion is based upon a misreading of the Alabama Medical Liability Act (AMLA) and the facts of this case, and it is due to be denied in its entirety.

**ARGUMENT**

I.    **AMLA § 6-5-548 (e) Does Not Apply to Defendants.**

As an initial matter, § 6-5-548 (e) of the AMLA does not apply to the defendant in a medical malpractice case. The clear text of this provision states that "a health care provider may testify as an expert witness in any action for injury or damages ***against* another health care provider** based on a breach of the standard of care only if he or she is 'a similarly situated health care provider' as defined above [in § 6-5-548 (b) & (c)]." Ala Code § 6-5-548 (e)(emphasis added). Only the expert for plaintiff in a malpractice case is testifying ***against* another health care provider**. The defendant's expert is testifying *for* another health care provider. Therefore, by its plain text, § 6-5-548 (e) does not apply to the defendant.

This asymmetrical structure makes perfect sense given the purpose of the statute. The AMLA is a tort reform statute. It is designed to stop the specter of malpractice liability from forcing doctors to practice defensive medicine. In particular, it is designed to stop doctors from ordering expensive and medically unnecessary tests in order to protect themselves from malpractice liability. The Alabama legislature clearly stated its intent in § 6-5-540 of the AMLA of 1987 and instructed that the statute "shall be construed so as to be consistent with . . . the legislative intent stated herein." Ala. Code § 6-5-541 (2007). The statute expressly states that

> this Legislature finds and declares that the increasing threat of legal actions for alleged medical injury causes and contributes

>to an increase in health care costs and places a heavy burden upon those who can least afford such increases, and that the threat of such action **contributes to expensive medical procedures to be performed by physicians and other health care providers which otherwise would not be considered necessary**, and that the spiraling costs and decreasing availability of essential medical services caused by the threat of such litigation constitutes a danger to the health and safety of the citizens of this state, and that this article should be given effect immediately to help control the spiraling cost of health care and to insure its continued availability.

Ala. Code § 6-5-540 (2007)(emphasis added). When interpreting an Alabama statute such as the AMLA, the Alabama Supreme Court instructs that "[t]he cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute." *Ex parte Moore*, 880 So.2d 1131, 1140 (Ala. 2003)(internal quotes and citations omitted).

The Act's restrictions on the plaintiff's expert's qualifications are designed to further this legislative intent. The Act prohibits a plaintiff from hiring a specialist to testify against a general practitioner because this would tend to force the general practitioner to order every imaginable test and procedure employed by specialists. Ala. Code § 6-5-548 (b) & (c). It also prohibits a plaintiff from hiring a specialist from another field to testify against a specialist because this would tend to force the specialist to order tests and procedures from a different field in order to avoid malpractice liability. *Id*. Thus, the restrictions on a plaintiff's experts help further the stated legislative intent.

The defendant's expert, on the other hand, cannot influence doctors to order more and more tests because the defendant's expert is testifying that the doctor met the standard of care. Therefore, the defendant's expert cannot contribute to the ever increasing practice of defensive medicine. The defendant's expert does not contribute to the constant upward creep of the minimally acceptable standard of care that is fostered by malpractice lawsuits. Accordingly, it makes perfect sense that the Act only restricts the plaintiff's medical experts. By its plain terms, § 6-5-548 (e) does not apply to the defendant. All of plaintiff's arguments are based upon a mistaken assumption that § 6-5-548 (e) applies to the defendant's expert. It does not. However, even if § 6-5-548 (e) applied to the defendant, plaintiff's arguments fail for the reasons shown below.

**II.   Plaintiff Argues that Dr. Garcia is Not Similarly Situated to Himself and That Oscar Rodriguez is Not Similarly Situated to Himself.**

Plaintiff argues that the Clinical Director at Federal Prison Camp (FPC) Montgomery, Orencio Garcia-Brenes, MD (Dr. Garcia), cannot testify in his own defense because he is licensed in Puerto Rico, a U.S. Territory, not a State. Pl's Mot. at 3-4. He makes the same argument for Oscar Rodriguez, a Dominican physician working without a State license as a Mid Level Practitioner for the BOP. Pl's Mot. at 4-6. Plaintiff argues that because § 6-5-548 (b) & (c) requires expert witnesses to be licensed in this or some other state, Dr. Garcia and Mr. Rodriguez cannot testify in their own defense concerning the standard of care that governs them.

4

First, as the United States showed in its Supplemental Filing in Support of its Motion for Summary Judgment (Docket No. 57), by making this argument, plaintiff concedes that the United States is entitled to summary judgment. In section II of its motion for summary judgment, the United States pointed out that Dr. Garcia and Mr. Rodriguez do not meet the AMLA's statutory definition of health care provider because Dr. Garcia is licensed in Puerto Rico, not Alabama. *See*, Ala. Code § 6-5-548 (5) & (8). Plaintiff argued that this State licensing provision of the AMLA does not apply to Federal employees, but now takes the position that the State licensing provisions in § 6-5-548 (b)(1) & (c)(1) do apply to Federal employees. Plaintiff cannot have it both ways. If the State licensing provisions of the AMLA apply to Federal employees, then the United States is entitled to summary judgment. The Court should hold plaintiff to the position he has taken in his most recent papers and grant summary judgment in favor of the United States.

Moreover, plaintiff's argument fails to read the AMLA as a whole and renders the plain language of the statute an absurdity. Section 6-5-548 (b) of the AMLA sates that "if **the health care provider whose breach of the standard of care is claimed to have created the cause of action** is not certified by an appropriate American board as a specialist . . . **a similarly situated health care provider** is one who meets all of the following requirements: (1) Is licensed by the appropriate regulatory board or agency of this or some other state; (2) Is trained and experienced in **the same** discipline or school of

5

practice; and (3) Has practiced in **the same** discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred." Ala. Code § 6-5-548 (b) (emphasis added)  Section 6-5-548 (c) contains virtually identical language for specialists.

The above-quoted definition of "similarly situated" clearly **does not** apply to the defendant health care provider himself.  The definitions require similarly situated health care providers to have "the same discipline or school of practice" or "the same specialty" as "the health care provider whose breach of the standard of care is claimed to have created the cause of action."  Ala. Code § 6-5-548 (b) & (c).  Therefore, these definitions cannot apply to the accused health care provider himself.  Plaintiff is arguing that Dr. Garcia is not similarly situated **to himself** and that Oscar Rodriguez is not similarly situated **to himself.**  This is an absurdity.

Plaintiff has accused these BOP health care providers of breaching the applicable standard of care.  No one is in a better position than Doctor Garcia and Oscar Rodriguez to testify concerning the standard of care that governs them.  The Alabama Supreme Court has consistently held that defendant doctors may testify in their own defense concerning the applicable standard of care. *See, e.g., Hempfleng v. Smith*, 753 So.2d 506, 507, 509 (Ala. 1999).  Accordingly, Dr. Garcia and Oscar Rodriguez are entitled to testify in their own defense concerning the standard of care.

6

### III.    There is No Separate Physician's Assistant Standard of Care.

Plaintiff argues that neither defendant's expert, Dr. Okolo, nor Dr. Garcia can testify concerning the standard of care that governs Oscar Rodriguez. Pl's Mot. at 6-7. As is addressed above, he also argues that Oscar Rodriguez cannot testify in his own defense. Plaintiff apparently thinks that he can gain an unfair tactical advantage over the United States at trial because he retained Raymond Mooney, a physician assistant, to testify as an expert against Oscar Rodriguez. *See, id.* at 9-10. However, in the context of this case, plaintiff's argument is just a game.

First, Mr. Mooney is not similarly situated to Oscar Rodriguez. Mr. Mooney holds a bachelor's degree from a physician assistant (PA) program at the University of Detroit, Mercy. DEX 1, Mooney Dep. pg. 5, Ln. 24 - pg. 6, Ln. 12. Thereafter, he passed the PA certification examination administered by the National Commission on the Certification of Physician Assistants (NCCPA). *Id.* at pg. 7, Ln. 13-19. He is licensed as a PA by the State of Michigan and has always practiced as a PA. DEX 2, Mooney CV. In contrast, Oscar Rodriguez is a foreign medical school graduate working as a Mid Level Practitioner (MLP) for the BOP.

Oscar Rodriguez is a graduate of the medical school of the University of the Dominican Republic. DEX 3, Rodriguez Dep. at pg. 6, Ln. 9-14. He completed a six year medical training program that included a one year internship. *Id.* at pg. 7, Ln. 5-6; pg. 14, Ln. 5-16.. He holds an MD degree. *Id.* at pg. 6, Ln. 9-10. He does not hold a

7

degree or a license as a physician's assistant. *Id.* at pg. 11, Ln. 18- pg. 12, Ln. 20. He was recruited by the BOP and works as an MLP pursuant to BOP regulations. *See*, DEX 4, BOP Health Services Manual, Chpt 1, pg. 8, ¶ e (1996). He has never worked as a physician assistant outside the BOP. DEX 3, Rodriguez Dep. pg. 12, Ln 2-5. Thus, Mr. Mooney is not trained and experienced in the same discipline or school of practice as Oscar Rodriguez. *See,* Ala. Code § 6-5-548 (b).

Moreover, even if Mr. Mooney were similarly situated to Oscar Rodriguez, there is no separate standard of care governing PA's. Mr. Mooney testified in his deposition that the same standard of care governs a doctor and a physician's assistant. DEX 1, Mooney Dep. at pg. 59, Ln. 21 - pg. 60, Ln. 25. When asked "**[t]here's not an independent PA standard of care, is there**," he answered unequivocally, "**[n]o sir, there isn't**." He also testified that the physician is ultimately responsible for supervising the PA. *Id.* at pg. 54, Ln. 24 - pg. 55, Ln. 19. Pursuant to BOP policy, Dr. Garcia was responsible for the clinical supervision of Oscar Rodriguez. *See*, DEX 4, BOP Health Services Manual, Chpt 1, pg. 8 (1996). In addition, Dr. Garcia was co-located with Oscar Rodriguez and closely supervised him on a daily basis. He is intimately familiar with the standard of care applicable to Oscar Rodriguez, and it is his job to ensure that Oscar Rodriguez meets it. *Id*.

In addition, plaintiff's own medical doctor experts, Dr. Philip Smith and Dr. Joseph Paris, both opine extensively in their Rule 26 reports and depositions about care

rendered by Oscar Rodriguez. As the United States anticipated, plaintiff argues that his medical doctor experts can testify about Oscar Rodriguez because it was Dr. Garcia's duty to supervise him. However, there is absolutely no mention of inadequate supervision by Dr. Garcia in either Dr. Smith's or Dr. Paris' Rule 26 reports or depositions. Plaintiff simply wants to have it both ways. He wants his medical doctor experts to testify against Oscar Rodriguez while simultaneously preventing anyone, including Mr. Rodriguez himself, from testifying in his favor. If plaintiff's medical doctor experts can testify against Oscar Rodriguez, then Dr. Okolo and Dr. Garcia should be able to testify for him. They can both testify that Dr. Garcia met the standard of care in supervising Oscar Rodriguez because Mr. Rodriguez complied with the applicable standard of care at all times.

It would be a gross misreading of the AMLA to allow a retained expert, Mr. Mooney, to testify that Oscar Rodriguez breached the applicable standard of care and then artificially prevent Mr. Rodriguez, Dr. Garcia, or Dr. Okolo from rebutting that testimony. They are all better qualified than Mr. Mooney to testify concerning the standard of care governing a foreign medical graduate working as an unlicensed MLP. All of these witnesses are familiar with the standard of care applicable to Oscar Rodriguez. They are all competent to testify concerning the standard of care and should be permitted to do so.

### IV.  Dr. Williams is a Treating Physician

Plaintiff argues that Dr. Antonio Williams should not be allowed to testify concerning the standard of care governing Dr. Garcia or Oscar Rodriguez. Doctor Williams is a treating physician. He will testify concerning his own examination, assessment, and recommendation for plaintiff's treatment. Doctor Williams has given a deposition in this case and plaintiff has not pointed to any testimony in the deposition that he objects to. Without such specific information concerning Dr. Wiliams' testimony, the United States is at a loss to determine what, if any, testimony by Dr. Williams plaintiff finds objectionable. Accordingly, plaintiff's blanked argument with respect to Dr. Williams should be denied.

### V.  If the Court so Desires, the United States can Hire a PA Expert.

Plaintiff has made this case far more complicated than it needs to be by hiring three medical experts. As the United States has previously argued, one expert per side should suffice. However, if the Court determines that multiple experts are required to address Oscar Rodriguez's standard of care, the United States could retain a PA expert in the time afforded by the recent continuance. The United States is loathe to over-complicate this case, but will retain a physician assistant expert if required by the Court. If plaintiff's arguments prevail, which they should not, the United States would be unfairly prejudiced if it were not allowed to retain an expert to rebut Mr. Mooney's testimony.

## CONCLUSION

For all of the above reasons, plaintiff's motion *in limine* to exclude trial testimony as to applicable standard of care by defendant's witnesses should be denied in its entirety.

Respectfully submitted this 28th day of January 2008.

                                      LEURA G. CANARY
                                      United States Attorney


By:   /s/Stephen M. Doyle
        STEPHEN M. DOYLE
        Chief, Civil Division
        Assistant United States Attorney
        Attorney for Defendant
        Post Office Box 197
        Montgomery, AL  36101-0197
        District of Columbia Bar No. 422474
        Telephone No.: (334) 223-7280
        Facsimile No.: (334) 223-7418
        **E-mail:  stephen.doyle@usdoj.gov**


## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to plaintiff's attorney, Julia T. Cochrun, Esquire.


                                      /s/Stephen M. Doyle
                                      Assistant United States Attorney