# DEFENDANT'S EXHIBIT 1

 SCHOOL OF MEDICINE

*Department of Medicine*

August 29, 2007

Julia T. Cochrun, Esq.
Pate and Cochrun, LLP
PO Box 10448
Birmingham, AL 35202

Dear Ms. Cochrun:

    I am a Professor of Medicine and Microbiology in the Division of Gastroenterology and Hepatology, Department of Medicine, at the University of Alabama at Birmingham (UAB) and hold the endowed *Mary J. Bradford Professorship in Gastroenterology*. I am board certified in internal medicine and gastroenterology (both by the American Board in Internal Medicine). My clinical responsibilities include serving as attending physician on the UAB Gastroenterology Inpatient Service and Gastroenterology Consult Service, practicing gastroenterology in my clinic at The Kirkland Clinic and covering the university services for my colleagues one week/weekend every other month. While fulfilling these responsibilities, I teach gastroenterology to medical students, interns, residents and fellows. In addition, I run a very busy and successful research laboratory in mucosal immunology and am principal investigator on a multiple National Institutes of Health (NIH) and VA grants, including an NIH grant to investigate the pathogenesis of *Helicobacter pylori*, the most common cause worldwide of gastroduodenal ulcer disease. Prior to joining the UAB faculty, I was a tenured scientist at the NIH in Bethesda, Maryland, where I did research in immunology and practiced gastroenterology. The attached curriculum vitae contains the record of my education, academic training, employment and publications. I am familiar with the national standard of care that would apply to a physician caring for a patient such as John Coggin who presents in this condition in 2001.

    I have testified in only one other matter in the past four years. I was deposed in the case of <u>Estate of Patricia Johnson v. Cracker Barrel</u>, CV 05-1603, United States District Court for the Northern District of Alabama. This was on behalf of the defendant and the deposition was taken in October 2006.

    As you requested, I have read and studied the documents that you provided me, including the 1) Complaint by John Coggin against the United States; 2) Deposition of Dr. Garcia-Brenes; 3) Deposition of Mr. Oscar Rodriquez; 4) Deposition of Mr. Christopher O. Thomas; 5) Deposition of Ms. Anita Rabidou; 6) Commissary purchase records; 7) Prison record including medical records of BOP Maxwell; 8) Baptist Hospital record; 9) Kirklin Clinic Records and letter of Dr. Cummings; and 10) Affidavits by Mr. Jim Johnson, Mr. Ronald Rankin, Mr. Mario J. Zayas-Canizares and Mr. John C. Coggins. My opinion of this case is based on my assessment of these documents;

**Division of Gastroenterology/Hepatology**
633 Zeigler Research Building
703 19th Street South
205.934.6060
Fax 205.934.8493

The University of
Alabama at Birmingham
Mailing Address:
ZRB 633
1530 3RD AVE S
BIRMINGHAM AL 35294-0007

training in internal medicine (internship and residency) and gastroenterology (fellowship), board certification in internal medicine and gastroenterology, over 25 years experience practicing gastroenterology at NIH and UAB, and my scientific training (post-doctoral at NIH) in evidence-based medicine. I have also attached another report that I have provided in the past to the parties regarding the facts and my opinions.

In my medical judgment, Mr. Coggin did not receive the standard of care provided to persons in the United States in 2001 with his symptoms, symptoms that all involved persons described as severe. I conclude the following points: (1) The patient was not properly questioned as to symptoms of upper gastrointestinal bleeding. As noted in the affidavits, others observed the patient vomit blood, but the patient was not adequately questioned about this symptom by the care providers; (2) At critical points in the patient's history, a nasogastric tube was not placed to evaluate the stomach for blood, and digital rectal examination was not performed to determine whether blood was present in the gastrointestinal tract. (3) Peptic ulcer disease was incorrectly not included in the differential diagnosis when the patient first presented. (4) Although gallbladder disease is in the differential diagnosis of abdominal pain, the patient's symptoms were incorrectly attributed to this problem, thereby diverting attention from the underlying problem: peptic ulcer disease. (5) Valuable time and effort was lost in evaluating the patient's asymptomatic left renal calculus. This was clearly not his problem, because he had right-sided abdominal symptoms and a normal urinalysis; the IVP eventually confirmed the presence of the stone in a caliceal diverticulum in the left kidney without any secondary hydronephrosis (kidney enlargement). (6) The diagnosis of gallbladder disease was not based on evidence, beginning with the physical examination: jaundice and pale stool, which often accompany cholelithaisis (gallstones), were not present; Murphy's sign, fever and chills, which typically accompany cholecystitis, were not present; and only right upper quadrant pain was present among Charcot's triad (biliary pain, jaundice and fever/chills), which is present in 70% of people with choledocholithiasis and cholangitis (gallstone in the common bile duct and septic gall bladder disease). Importantly, the 3 mm common bile duct dimension detected on ultrasound is well within the upper limit of normal (10 mm), indicating that common bile duct obstruction due to a stone was not present. (7) The patient was prescribed high doses of non-steroidal inflammatory drugs, which themselves can induce mucosal ulceration throughout the gastrointestinal tract, exacerbating his underlying peptic ulcer disease. (8) The patient was prescribed narcotic pain medication, thereby masking the underlying problem and violating the important principle of identifying the cause of the pain before suppressing it. (9) The patient was not evaluated promptly with esophagogastroduodenoscopy (EGD) to identify the cause of his symptoms. Such a procedure would have shown the ulcer disease (that eventually was diagnosed surgically) and that normally is treated medically with proton pump inhibitor therapy.

The applicable standard of care for this man's clinical presentation would have been to place a nasogastric tube and perform a digital rectal examination to check for active bleeding. An EGD would have been performed emergently if blood were detected; the procedure would have been performed within 24 hours if no blood had been detected. When he vomited blood, he would have been admitted to an intensive care unit

in a hospital. His *Helicobacter pylori* infection status would have been determined by serology and gastric biopsy at the time of the EGD (serology was negative on February 7, 2002 at his Kirkland Clinic visit). All non-steroidal anti-inflammatory drugs would never have been prescribed and certainly not continued in the setting of persistent symptoms. Moreover he would have been put on maximum doses of a proton pump inhibitor. These measures very likely would have effectively treated his peptic ulcer disease, circumventing the surgery that he eventually underwent and its sequelae.

If you have additional questions or documents that you wish for me to review, please do not hesitate to contact me.

Sincerely,

Phillip D. Smith, M.D.
*Mary J. Bradford Professor in Gastroenterology*
Professor of Medicine and Microbiology
Director, Mucosal HIV and Immunobiology Center
University of Alabama at Birmingham
703 So. 19th St. (ZRB 633)
Birmingham, AL 35294

Phone  (205) 975-9254
Fax    (205) 934-8493
E-mail PDSmith@UAB.edu