IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN COGGIN, | ) |
| Plaintiff | ) ) ) |
| VS. | ) CIVIL ACTION NO: ) ) |
| UNITED STATES OF AMERICA, | ) 2:05-cv-1214-F ) |
| Defendant | ) |

PLAINTIFF'S RESPONSE TO U.S. GOVERNMENT'S
RESPONSE TO SHOW CAUSE MOTION

Comes now the plaintiff and in reply to United States Government's Response to Show Cause, submits the following.

I.   **AMLA § 6-5-548 and its Subparts Apply to Defendants**

Once again the government attempts to distort the clear purpose of this statute that sets out the qualifications and evidentiary rules as to those who would offer standard of care testimony in a case of medical malpractice in Alabama. Section 6-5-458 (e) states as its purpose:

> "The purpose of this section is to establish a relative standard of care for health care providers." *Id.*

1

There is not one word that states that a defendant is exempt from the purpose of the statute, that is, " to establish a relative standard of care for a health care provider". It goes on to say:

> "A health care provider may testify as an expert **in any action for injury or damages against another health care provider** based upon a breach in the standard of care only if he or she is a "similarly situated heath care provider" as defined above." *Id*. (emphasis added).

It does not relieve a defendant of this same requirement. This section applies to all actions *against* health care providers. The government has misconstrued the language of the statute to mean testimony against another health care provider, when the word "against" clearly refers to an action for injury or damages. Without the commas the government has read in to its interpretation, the statute applies to both sides. The statute sets out that if you are to prove your case you must do it with a witness that is competent under the Act. It prevents for example, neurosurgeons attempting to set the standard of care for obstetricians. It certainly cannot be read to allow a obstetrician to rebut testimony from a "similarly situated" obstetrician with that of a neurosurgeon. The government's assertion that a defendant is entitled to bring testimony of a lesser and unreliable nature because its expert is testifying *for* a health care provider is ludicrous. It ignores the clear wording of the statute, the totality of the statutory scheme of the AMLA, disregards the case law and is devoid of common sense.

The legislature's intent that this statute does apply to any "standard of care" witness, is section (d) of this provision. Section 6-5-548(d) states that:

> Notwithstanding any provision of the Alabama Rules of Evidence to the contrary, no evidence shall be admitted or

2

> received, whether of a substantive nature or for impeachment purposes, concerning the medical liability insurance, or medical insurance carrier, or any interest in an insurer that insures medical or other professional liability, **of any witness presenting testimony as a "similarly situated health care provider" under the provisions of this section or of any defendant**.

This section speaks to any "similarly situated" expert and does not limit its scope to experts that only testify *against* health care providers.

The government seeks to lower the standard of proof required of a defendant who defends himself in a medical malpractice case under the AMLA. As its basis for such a position, it claims that the AMLA is an asymmetrical structure that would dash the rights of persons injured by medical providers because its intent is to prevent actions since they "contribute to expensive medical procedures to be preformed by physicians and other health care providers which otherwise would not be considered necessary". Def Opposition filing No. 69 at page 3 paragraph 1. The government's argument that legislature in enacting the AMLA sanctioned allowing a defendant to defend malpractice cases with less qualified and dissimilarly situated experts cannot be accepted. If it intended to do so, it could have clearly set that intention out in the Act. If defendants get a shield of this sort, it is one that must be clearly set out. But of course it did not. The legislature, unlike the government here, recognizes that the intent of the Act was and is to ensure that the people of Alabama get health care that meets national standards. This proposition likewise is not supported in the case law.

The concept that both sides of a medical malpractice case will be held to the same levels and types of proof is clear. The Alabama Supreme Court has determined that the burden of proof for both sides of a medical malpractice case under the AMLA will be that of substantial evidence. If the defendant seeks to establish a defense, it must do so by substantial evidence. *Cackowski v. Wal-Mart*, 767 So 2d 319, 330 (Ala 2000).

In *Cackowski*, the defendant defended against the malpractice claim by alleging contributory negligence by the plaintiff. The Court held that where the burden of proof required of a plaintiff is "substantial evidence", the defendant health care provider bears the same burden to establish contributory negligence. Here is where the Court makes plain that "the goose and the gander" get the same treatment. The Court's majority rejected an "asymmetrical approach" to protect health care providers at the expense of the injured. Justice Hooper, alone in his dissent, adopted the notion espoused by the government here that a defendant should be allowed to avoid the requirements the Act. This approach failed then and it fails now.

The courts have found that the "rules" apply to both sides in other areas of proof in these cases. For example if a summary judgement is sought in a FTCA malpractice case, the party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) citing FED. R. CIV. P. 56(c). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. See *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment). Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by his or her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is

4

a genuine issue for trial.'" *Celotex*, at 324 citing FRCP 56(e). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." FRCP 56(e); see also *Matsushita* at 587. An action is void of a material issue for trial "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, at 587.

Because this is a medical malpractice case under the AMLA this process does not differ. The burden is upon the moving health care provider to make a prima facie case showing, by substantial evidence, that no genuine issue of material fact exists as to whether the health care provider's alleged breach of the applicable standard of care proximately caused the injury for which damages is sought. Until this is done, the burden does not shift to the nonmovant to present substantial evidence, through expert testimony from a similarly situated health care provider. *Mixon v. Cason* 622 So 2d. 918, 921 (Ala. 1993) rehearing denied 639 so 2d 961 ( Ala. 1993)[1]. Certainly what constitutes evidence that would make a prima facie case could not be evidence that fails basic competence rules under the Act. Otherwise, a nursing assistant could file an affidavit stating that the

---

[1] In the present case the government's motion for summary judgment is not based upon a claim that it did meet the standard of care. It has only moved based upon four grounds: 1) that BOP guards cannot be liable for medical malpractice; 2) that the BOP doctor and PA are not subject to the AMLA ; 3) that an off site surgeon was not a government employee; and 4) plaintiff waived his claim for economic damages. Thus this motion does not shift the burden to the plaintiff on this issue and cause the plaintiff here to file evidence in opposition in order to create a question of fact.

physician at her clinic met the standard of care and shift the burden. Likewise, in the case where the plaintiff moves for summary judgment with competent evidence provided by a similarly situated expert, the defendant could not create a question of fact unless he countered it with substantial evidence through expert testimony from a similarly situated health care provider. *Id.* at 921. Qualified expert versus non-qualified expert does not create such an issue. It matters not if the expert testimony is from the defendant or his hired witness. It does not negate the requirement that the witness be similarly situated. As §6-5-458 (e) states "the purpose of this section is to establish a relative standard of care for health care providers." To those ends it has established three prerequisites for offering standard of care evidence. While the courts have analyzed the application of sections (2) and (3), never have they carved out any exceptions for section (1), the licensure requirement.

**II.    Dr. Garcia and PA Rodriguez Are Not in the Best Position to Testify Concerning the Standard of Care That Governs Them.**

The FTCA holds this federal health care facility and its providers to the law for malpractice in Alabama, the state where it is located. The United States government chose to staff this Alabama federal facility with personnel, such as Garcia and Rodriguez, that lack licensure in any state. They have not undergone any testing that would give rise to the assumption that they would be familiar with the national standard of care for a physician nor physician assistant. That Alabama law will not tolerate the standard of care to be determined by those that fail to have a license in some state in this country and the

minimum qualifications of training is clear in the language of §6-5-548. The courts have remained steadfast in these preconditions. The Alabama law does not even allow a witness board certified by another country to testify as to the standard for this country. *Plitt v. Griggs*, 585 So. 2d 1317 (Ala. 1991). Garcia and Rodriguez "shall be liable . . . in the same manner and to the same extent as a private individual under the circumstances . . . ." 28 U.S.C. § 2674 (1982) and "in accordance with the law of the place where the act or omission occurred." *Id.* § 1346(b)(1).

The government cites *Hempfleng v. Smith* for the proposition that defendant doctors may testify in their own defense[2]. Of course no declaration of the sort is contained anywhere in the *Hempfleng* case.

The notion that no one is in a better position than Garcia and Rodriguez to testify concerning the standard of care that governs them is absurd. The health care providers that meet the statutory requirements are those that have been granted the permission to do so.

### III.   There *Is* a Separate Standard of Care for Physician Assistant

Again the government has lost site of the AMLA and its interpretation in the case law. The determination of what kind of expert will be "similarly situated" under § 6-5-548 rests upon what specialty or area of expertise the accused practitioner was acting in

---

[2] The proper cite is Hempfleng v. Smith, 753 So. 2d 506 (Ala. Civ. App. 1999).

when the incident took place. The law recognizes that practitioners often stray out of their specialty and provide care not strictly in their "specialty". The case law directs the trial court to first look to the area of medicine from which the breach arises. *Medlin v. Crosby*, 583 So. 2d 1290, 1294 (Ala. 1991). The Alabama Supreme Court outlined this process for determining the type of similarly situated expert in *Holly v. Huntsville Hosp.*, 865 So. 2d 1177 (Ala. 2003). The *Holly* Court first pointed to the holding in *Medlin* and identified the area of practice of the alleged malpractice: emergency room medicine. It held that a board certified emergency room physician met the statutory requirements for similarly situated because the area of practice of the alleged malpractice was that of emergency medicine. It found the trial court in error for excluding such an expert on the basis that the defendant physician was boarded in family practice when it was clear that at the time of the alleged malpractice he was acting as an emergency room physician.

Mr. Rodriguez at all times caring for the plaintiff acted as a physician assistant by his own testimony. (Exhibit 1, Rodriguez depo. at 27 line 14 -17). He has sworn that he has been employed as a PA at Maxwell since 1999. *Id.* Even the Program Statements filed by the government in support of its various motions, identifies the Mid-Level Providers are a category that includes "Physician Assistants-Certified, Nurse Practitioners and Physician Assistants-Non Certified" (Exhibit 2, Program Statement at 3(e)). Mr. Mooney meets the requirements of § 6-5-548 and is competent to give testimony as the standard of care for a PA.

There is an independent standard of care for physician assistants. The only competent evidence as to what that is comes from the qualified similarly situated provider

Mr. Mooney. Mr. Mooney acknowledges that even with the physician as "captain of the ship" he as a PA bears individual responsibility to execute care that meets the standard. (Exhibit 3, Mooney depo page 54 line 24 to page 55 line 17). He does not agree that the PA standard of care is determined by the duties delegated to the PA by the physician. *Id.* at page 58 line 24 to page 59 line 8, page 60 line 10 to line 14. He does agree that when a certain task such as suturing a laceration is undertaken by a PA, it must be sutured to the same standard whether a PA or a physician sutures it. *Id.* page 60 line 10 to line 20. In that case there may not be an independent standard of care. *Id.* at line25. Again he reiterates the concept that when viewing a task delegated to the PA the physician may practically judge whether the PA met the standard of care. *Id. Page 62 line 25 to page 64 line1.* However Mooney does make clear that while from a practical standpoint sometimes "what must be done" under the standard of care for a PA may be the same as "what must be done" as the physician, the law does not allow him to "legally" comment on the physicians standard of care. He does insist that the PA must use independent judgment and does not have to agree with medical decisions made by the supervising physician and should document that disagreement. *Id.* page 74 line 17 to page 75 line 8. When pressed as to whether he can give testimony as to another specialists standard of care, he did admit that he might have an opinion that they did not but he would leave it to the judge to determine the admissibility of such an opinion. *Id.* at page 9 to page 76 line 11.

The government argues that plaintiff is seeking some tactical advantage. Plaintiff again is asking the court to apply to law of the AMLA, that is all. Of course the government at the end of its response acknowledges that it may have fallen short by failing to hire an

expert to provide the necessary evidence as to PA standard of care. It asserts that plaintiff has made the case far more complicated that it need to be by hiring three experts. These cases *are* complicated and have strict requirements set out in the language of the statues that make up the AMLA.

The AMLA law is clear. When a health care provider is alleged to have breached the standard of care, the experts as to the issue of the standard of care must be similarly situated, either side of the case. Plaintiff's expert Mooney, understands this and even pointed it out to the government in his deposition. When asked if a physician is qualified to determine whether or not a PA has met the standard, Mr. Mooney correctly responded that it is determined by each jurisdiction, with most requiring "like for like" (Mooney depo at 62 line 12 to 63 line 15). The requirements of care to meet the standard can be the same but a PA can't provide that testimony for the doctor any more than the doctor can do it for the PA. This of course is clearly set out in § 6-5-548.

### IV. Dr. Williams Cannot Give Standard of Care Testimony in Regards to Non-surgeons as He Is Not "Similarly Situated"

Dr. Williams is a surgeon and he was asked by the government whether or not Garcia met the standard of care in his declaration filed in support of the government's motion for summary judgment and again in his deposition taken for trial. (Exhibit 4, Williams Depo. at pages 21 line 25 to 26 line2; pages 22 line 9 to page 14 and page 22 line 18 to 24, page 87 line 10). This is impermissible testimony under the AMLA for the reasons set out in Plaintiff's Motion in Limine.

## V. The United States Should Not Be Allowed to Hire a PA Expert

This case was filed on December 21, 2005. Even before that a Form 95 was filed putting the government on notice as to the nature of the claim. From the outset, the failure to meet the standard of care by PA Rodriguez has always been at issue. Nothing prevented the government from complying with the Court's order for designation of experts. This Court even granted the government one week extension for said designation. It would be manifestly unjust to allow the government to now add experts.

Respectfully submitted,

_/s/ Julia T. Cochrun_
JULIA T. COCHRUN
Attorney for Plaintiff

OF COUNSEL:
PATE & COCHRUN, LLP
P. O. Box 10448
Birmingham, AL 35202-0448
Telephone: (205) 323-3900
Fax: (205) 323-3906
e-mail: filings@plc-law.com

11

## CERTIFICATE OF SERVICE

I hereby certify that on this the 1st day of February, 2008, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, the CM/ECF system will send notification of such filing to the following:

Stephen M. Doyle, Esq.

Assistant U.S. Attorney

P. O. Box 197

Montgomery, AL 36101-0197

and I hereby certified that I have mailed the foregoing document by U.S. Mail, postage prepaid, to the following:

None

_____
OF COUNSEL